IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 22–12–BU–DLC |
| Plaintiff, | |
| vs. | ORDER |
| CODY SCOTT SHULER, | |
| Defendant. | |

On August 14, 2023, Defendant Cody Scott Shuler filed a pro se motion to reduce his 77-month federal drug sentence under 18 U.S.C. § 3582(c)(1)(A). (Doc. 52.) Shuler was sentenced on August 25, 2022. (Doc. 48.) His projected release date is August 2, 2027. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed February 27, 2024). On August 15, 2023, counsel was appointed to represent Shuler. (Docs. 53, 54.) Appointed counsel filed an amended motion on December 22, 2023. (Doc. 57.) The government opposes the motion for compassionate release. (Doc. 63.)

## ANALYSIS

The First Step Act gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) takes into consideration the sentencing

1

factors set forth in 18 U.S.C. § 3553(a); (2) is warranted by "extraordinary and compelling reasons," or the defendant is at least 70 years old and has served at least 30 years in prison; and (3) is consistent with the applicable policy statements of the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam). The Sentencing Commission's relevant policy statement adds that the Court may not reduce a term of imprisonment unless "the defendant is not a danger to the safety of any other person or to the community." U.S. Sent'g Guidelines Manual § 1B1.13(a)(2) (U.S. Sent'g Comm'n 2023).[1]

Shuler argues that a reduction in his sentence is warranted because he suffers from severe medical conditions that are not being adequately treated by the BOP; he is at a higher risk of Covid-19 related mortality due to his medical conditions; he suffers from worsening cognitive impairments; and he has experienced significant rehabilitation and personal growth while incarcerated. (*See* Docs. 52, 58.) For the reasons discussed below, the Court denies the motion for compassionate release.

---

[1] In November 2023, the United States Sentencing Commission revised § 1B1.13 of the Sentencing Guidelines Manual, in part, moving the Commission's policy statements that were previously in commentary notes into the actual Guidelines text. *See* 2023 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, First Step Act—Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 1, 2023) (available at https://www.ussc. gov/guidelines/amendments/adopted-amendments-effective-november-1-2023).

I. **Exhaustion of Administrative Remedies**

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Shuler submitted a request for compassionate release to the warden of his facility on August 1, 2023, but does not appear to have received a response. (Doc. 52-2.) Thus, it would appear that Shuler has exhausted his administrative remedies.

II. **Extraordinary and Compelling Reasons**

The Sentencing Commission provides explicit examples of what constitutes an "extraordinary and compelling reason," including where the defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death" or "is at increased risk of suffering severe medical complications or death as a result of exposure to [an] ongoing outbreak of infectious disease or [an] ongoing public health emergency." U.S. Sent'g Guidelines Manual § 1B1.13(b)(1)(C), (D)(ii) (U.S. Sent'g Comm'n 2023). The defendant may also "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the"

examples provided by the Sentencing Commission, "are similar in gravity to" the examples provided.  *Id.* § 1B1.13(b)(5).  However, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason."  *Id.* § 1B1.13(d).

Shuler has nephrotic syndrome stemming from minimal change disease ("MCD"), resulting in reduced kidney function, risk of blood clots, and high blood pressure.  (*See* Docs. 58-1, 59.)  Shuler has also been diagnosed with depression, anxiety, major depressive disorder, and PTSD.  (*See* Docs. 58-1, 59, 50.)  In support of his motion, Shuler has offered the opinion of Dr. Florence Yuan, a board-certified physician specializing in family medicine with training and experience in caring for patients with chronic kidney disease and working in the correctional setting.  (Doc. 58-1 at 1.)  Dr. Yuan's assessment is based on her review of Shuler's BOP medical records.  (*Id.*)  Dr. Yuan has not spoken with or physically examined Shuler.  (*Id.*)

Dr. Yuan reports that although Shuler has been prescribed numerous drugs to address his nephrotic syndrome and MCD, he "has frequently not received doses."  (*Id.* at 2.)  Dr. Yuan also reported that it is unclear whether Shuler has established regular care with a nephrologist to address his MCD.  (*Id.*)  Dr. Yuan opined that Shuler's MCD "is likely not controlled and he is at risk for requiring hospitalization and additional medication to suppress his immune system."  (*Id.*)  Dr. Yuan also noted that Shuler has not received his blood pressure medication in

recent months and recent evaluations show "elevated blood pressure and excess protein loss in his urine, which reflects inadequate control of both his high blood pressure and his kidney conditions." (*Id.* at 3.) She also noted that Shuler has not received atorvastatin to help reduce his risk of strokes and heart attacks, as recommended by the American Heart Association and American College of Cardiology. (*Id.*) Dr. Yuan concluded that, overall, Shuler "needs more comprehensive and closely monitored care than he is receiving" and "[h]is current medical status puts him at high risk for hospitalization, progression of kidney disease, and worsening quality of life." (*Id.* at 4.)

The United States contends that the BOP "has the ability to treat Shuler's conditions in custody." (Doc. 63 at 5.) The United States references the BOP's medical records demonstrating the care that Shuler has received thus far while in custody, including inpatient stays at an outside medical facility, referrals to nephrologists, and lab testing. (*See* Doc. 59-1 at 20, 29, 30, 39, 42, 49, and 50.) The United States has also offered the opinion of Dr. James K. Pelton, the Western Regional Medical Director for the BOP. (Doc. 63-1 at 1.) Dr. Pelton states that the BOP "has the ability" to treat Shuler's conditions, "is providing medical care to [Shuler] in his current setting," and has the ability to transfer Shuler to a federal medical facility if necessary. (*Id.* at 2–3.) Moreover, Dr. Pelton states that if emergency medical attention proves to be necessary, Shuler will be transported to a

hospital in the community where the acute condition would be managed. (*Id.* at 3.)

While the Court has some concerns regarding the sufficiency of the medical care Shuler has received thus far in BOP custody, it is not convinced that extraordinary and compelling circumstances have been demonstrated at this point. Shuler is certainly suffering from a severe medical condition that requires long-term or specialized medical care, without which he is at risk of serious deterioration in health or death. However, the Court is not convinced that the BOP has wholly failed at, or is incapable of, providing the care Shuler requires or that Shuler would receive better medical care outside of custody. Indeed, the medical record demonstrates that the BOP has taken a number of steps, albeit largely reactive, to address Shuler's health concerns. Further, Dr. Pelton has declared that the BOP is capable of providing adequate care, even if that requires transfer to a federal medical facility or outside medical facility. Accordingly, the Court finds that, at this time, Shuler has not presented extraordinary and compelling circumstances based on the BOP's failure to provide adequate medical care.

The Court is also not convinced that the risk of exposure to Covid-19 or Shuler's mental health conditions amount to extraordinary or compelling circumstances. First, while the risk of Covid-19 exposure still exists, especially in the custodial setting, the spread of Covid-19 has significantly decreased and there is no evidence of an "ongoing outbreak" at USP Victorville where Shuler is

located. Second, Shuler has not presented sufficient evidence demonstrating a lack of mental health treatment while incarcerated. The medical records and Dr. Yuan's report both demonstrate that Shuler is being treated for his mental health issues. (*See* Docs. 59-1, 58-1 at 3.)

### III.   Section 3553(a) Factors & Risk of Danger to the Community

The Court will also address the federal sentencing objectives set forth in 18 U.S.C. § 3553(a) and whether Shuler continues to present a risk of danger to the community. The relevant factors the Court must consider include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

Shuler's offense conduct involved the distribution of dangerous drugs while in possession of a firearm. (Doc. 50 ¶¶ 13–26.) As part of an investigation by the Southwest Montana Drug Task Force, Region 1, law enforcement obtained a search warrant for Shuler's vehicle. (*Id.* ¶ 17.) A search of the vehicle resulted in

the discovery of approximately 155 counterfeit oxycodone (fentanyl) pills, 25.9 grams of suspected methamphetamine, 1.1 grams of suspected heroine, and 5 dextroamphetamine pills.  (*Id.*)  Shuler admitted to making multiple trips to Spokane, Washington, to obtain drugs and estimated that he had obtained approximately 5 ounces of methamphetamine, a half ounce of heroine, and 220 pills across those trips.  (*Id.* ¶ 19.)  He also admitted that he was obtaining drugs in order to sell them.  (*Id.* ¶¶ 18–19.)

Even after this interaction with law enforcement, Shuler continued to engage in drug distribution and other criminal activity.  (*See id.* ¶ 20–23.)  A confidential informant reported to law enforcement that Shuler had assaulted an individual and had threatened another with a handgun.  (*Id.* ¶ 23.)  Shuler was ultimately arrested and found with a handgun with a loaded magazine, drugs and drug paraphernalia, additional ammunition, and a homemade baseball bat/club.  (*Id.* ¶ 25.)

Shuler's criminal history began at age 12 when he was arrested for felony burglary.  (*Id.* ¶ 43.)  At age 15 he was charged with resisting or obstructing a police officer.  (*Id.* ¶ 44.)  As an adult, Shuler has been convicted of several misdemeanors, including for disorderly conduct, domestic violence, theft, violation of a protective order, possession of controlled substances, and disturbing the peace.  (*Id.* ¶¶ 45–53.)  Shuler has also previously been convicted of felony possession of controlled substances.  (*Id.* ¶ 48.)  His sentence in that case was suspended;

however, after being revoked several times, Shuler served a custodial sentence. (*Id.*)  At the time of sentencing, his criminal history score totaled seven, placing him in a criminal history category of IV.  (*Id.* ¶ 55.)

Shuler has only served approximately 18 months of his 77 month sentence, or less than 25%.  Alternatively, calculating his time served based on his projected release date, Shuler has only served 18 out of 59 months, or approximately 30% of his term of imprisonment.  Given the seriousness of the offense conduct, the history and characteristics of Shuler, and the need to deter future criminal conduct, the Court finds that the federal sentencing objectives set forth in 18 U.S.C. § 3553(a) do not support Shuler's early release from custody.  Furthermore, Shuler's criminal history involving both drugs and violence combined with the details of the offense in this matter lead the Court to the conclusion that Shuler was, and continues to be, a risk to the community.

## CONCLUSION

Shuler has failed to demonstrate extraordinary and compelling circumstances and the sentencing factors and his continued risk to the community also weigh against his early release.  However, the Court is concerned by Shuler;s current medical condition and believes there is more the BOP could do in regard to treating Shuler's medical needs.  The Court expects the BOP to provide adequate care and, should the BOP fail to do so over the course of the next year, Shuler may

have a stronger claim for compassionate release.

Accordingly, IT IS ORDERED that the defendant's motion for compassionate release (Docs. 52, 57) is DENIED.

DATED this 28th day of February, 2024.

*Dana L. Christensen*
Dana L. Christensen, District Judge
United States District Court